**WELLS FARGO BANK & UNION TRUST CO. v. ANGLIM, Collector of Internal Revenue.**

No. 21989–W.

District Court, N. D. California, S. D.

Aug. 2, 1943.

Heller, Ehrman, White & McAuliffe, of San Francisco, Cal., for plaintiff.

Frank J. Hennessy, U. S. Atty., of San Francisco, Cal., and Esther B. Phillips, Asst. U. S. Atty., of San Francisco, Cal., for defendant.

WELSH, District Judge.

Findings of Fact

I. That at all times herein mentioned the plaintiff was and now is a corporation duly organized and existing under the laws of the State of California, with its principal place of business in San Francisco, California.

II. That at the time of the payment of the taxes hereinafter mentioned, the defendant was the duly appointed and acting United States Collector of Internal Revenue for the First Collection District of California.

III. That on July 11, July 16, August 3, August 9, September 25 and December 20, 1934, plaintiff transferred Shanghai dollars aggregating 2,090,000 to R. S. Odell & Company of San Francisco, California, at a total price of $771,945. Said Shanghai dollars had been purchased by plaintiff from P. & O. Banking Corporation, Shanghai, China, and from R. S. Odell Company during the year 1934, on July 7, July 16, August 3, August 9, August 20 and December 20, at a total cost of $741,031.25.

IV. On or about June 1, 1938, the Commissioner of Internal Revenue assessed an internal revenue tax against the plaintiff amounting to $11,755.61 on account of a profit derived from said sales amounting to $23,511.21. On July 1, 1938, the plaintiff paid $10,994.80 of said tax to the defendant and paid the balance on August 17, 1938. Plaintiff duly filed claim in abatement of said tax, and after payment duly filed claim for refund which claim was rejected on October 6, 1939.

V. In determining the profit derived from said transactions, the Commissioner did not allow the plaintiff to deduct $760.61 as an expense. Said item represented storage charges for use of plaintiff's vaults in San Francisco.

VI. The plaintiff's claim for refund was based on the same ground presented in the complaint herein, namely, that said transactions represented transactions in purchase and sale of foreign silver coin and did not constitute silver bullion transactions within the meaning of the Act of Congress known as the Silver Purchase Act of 1934, 31 U.S.C.A. §§ 311a, 316a, 316b, 405a, 448-448e, 734a, 734b.

VII. The transactions were in fact purchases and sales of silver coins which were purchased by plaintiff and which were imported into the United States from China

because of their silver content, and not their form, and which were purchased, held and sold, not for the purpose for which they were processed, manufactured and coined, but because of their silver content. Said coins constituted scrap silver or silver bullion.

VIII. Plaintiff purchased on June 14, June 29, September 18 and October 9, 1934, from the P. & O. Banking Corporation at Shanghai, China, an aggregate number of 1,275,000 Shanghai dollars, at a total cost of $453,112.18. Plaintiff sold the silver content of said 1,275,000 Shanghai dollars at the aggregate price of $477,537.25 and derived a net profit therefrom amounting to $9,549.02.

IX. Thereafter the Commissioner of Internal Revenue assessed an additional tax, amounting to 50% of said profit. Plaintiff paid the whole of said assessed tax, amounting to $4,774.51 on or about August 16, 1938. Plaintiff duly filed claim in abatement and also filed claim for refund thereof on August 29, 1939, which claim was rejected on October 6, 1939.

X. Plaintiff's claim for refund was based on the same contention made in the complaint, namely, that the profits derived by said transactions, although they constituted sales of "silver bullion" subject to tax, were erroneously computed by the Commissioner. Plaintiff contended that said Chinese coins were acquired in China pursuant to foreign exchange transactions which coins were subsequently imported to the American market in fulfillment of forward sales of silver bullion, and that said sales had been liquidated by delivery of such silver after the proceeds of such sales were converted directly or indirectly into silver foreign exchange within three days before or after the making of such contract. Plaintiff relied on Regulations 85, Article 42, duly promulgated under the provisions of the Silver Act of 1934, and contended that the profits derived from said sales of silver bullion were to be computed upon the difference between the Shanghai cost and the "spot" silver price on the New York Market, where said silver bullion was ultimately disposed of, and said price was to be taken as of the date of the contract to sell.

XI. Said sales were in fact sales of silver bullion to be imported into the United States and the proceeds of said sales were not in fact converted into silver foreign exchange.

From the foregoing facts, the Court renders the following

### Conclusions of Law

(1) That the Commissioner of Internal Revenue was correct in his determination that the net profits amounting to $23,511.21 as a result of the transactions referred to in Paragraph III above were profits derived from the sale of silver bullion and which profits were taxable at the rate of 50%.

(2) That the Commissioner of Internal Revenue was correct in his determination that in computing the expenses to be deducted in computing the net profits derived from said transactions, storage charges for storing said silver bullion in plaintiff's own vaults were not deductible expenses.

(3) That the Commissioner of Internal Revenue was correct in his determination that the proceeds of said sales of silver bullion referred to in Finding VIII were not converted into silver foreign exchange within three days of making said contract.

(4) That the Commissioner of Internal Revenue was correct in his determination that plaintiff's claims for refund should be rejected.

Let judgment be entered accordingly for the defendant, with costs as may be taxed.